In re REESE.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1901.)

No. 1,462.

1. INJUNCTION—CONTEMPT—COMMITMENT—VALIDITY.

While a person not a party defendant, nor within the terms of an order granting a temporary injunction, may be punished for contempt, subject to the limitations of Rev. St. U. S. § 725, where he intentionally interferes to thwart the court in enforcing such order, his offense is opposed solely to the authority and dignity of the court, irrespective of its violation of the rights of complainant, and is totally different from the offense of a party defendant, or a person against whom the order is made, and by whom alone it can be violated; and, contempt being a crime, it follows that one accused thereof must be tried on the charge made, and no other, and hence one not a party, nor bound by an injunctional order, cannot be tried and convicted on a charge of contempt proceeding wholly on the theory that he was a party bound by the order, and his commitment sustained on the ground that he was otherwise guilty in interfering with its enforcement.

2. HABEAS CORPUS—REVIEW OF COMMITMENT—SCOPE OF REMEDY.

It is incompetent for the court in habeas corpus proceedings to review the facts on which the commitment was ordered, or the regularity merely of the proceedings which resulted in the commitment. If any error be committed in these respects, the remedy of the prisoner is by appeal from the order of commitment.

3. SAME—IMPRISONMENT FOR CONTEMPT OF INJUNCTION—PROPER REMEDY FOR DISCHARGE.

Habeas corpus is a proper remedy to secure a discharge from imprisonment for contempt in violating an injunction sought on the ground that the prisoner, not being a party to the cause, was not subject to the jurisdiction of the court in the particular case, and hence it had no authority to punish for the offense as charged against him.

Appeal from the Circuit Court of the United States for the District of Kansas.

On June 13, 1899, the Western Coal & Mining Company, a corporation of the state of Missouri, exhibited its bill of complaint to the circuit court of the United States for the district of Kansas (Third division) against W. T. Wright and 45 other persons by name, charging that they, and each and all of them, were residents and citizens of the state of Kansas; and also against "all members of the United Mine Workers lodges or unions in Crawford and Cherokee counties in the state of Kansas, each and all of whom' are residents and citizens of the state of Kansas"; and against "all members of District No. 14 of the United Mine Workers of America, citizens of the state of Kansas, co-operating with them, whose names are not known to your orator; and your orator prays that it may be permitted to add hereto the names of such other persons, citizens of Kansas, as may become known, and charge them in apt words as in the premises." The bill charges that the defendants so named and described by force, threats, intimidation, and violence are preventing and threatening to prevent the plaintiff's employés from prosecuting their customary and usual work at complainant's mines, and are by the same means preventing and threatening to prevent others who desire to work for complainant from so doing, to such an extent that complainant, without the restraining aid of the court, would be unable to prosecute its usual and ordi-

nary business of mining coal, and would suffer irreparable injury and damage, not only from the enforced stoppage of its business, but in the serious and permanent injury to its machinery and equipment which would be occasioned by the enforced stoppage of their operation. The prayer of the bill was for a provisional and permanent injunction against "said defendants and each and all other persons co-operating with them whose names are not known to your orator, and all other members of the lodges or unions of the United Mine Workers of America in Crawford and Cherokee counties, state of Kansas, and all other persons conspiring or combining with them." But the process of subpoena was prayed for only against the defendants whose individual names were set forth in the complaint. On July 18, 1899, a temporary injunction was granted conformably to the prayer of the bill. The order granting the same commences with a statement of the parties to the suit as follows: "Western Coal and Mining Company, Complainant, vs. W. T. Wright, Robert Gilmore, Hugh Bone et al., and All Members of the United Mine Workers Lodges or Unions in Crawford and Cherokee Counties in the State of Kansas, and All Members of District No. 14 of the United Mine Workers of America, and All Other Persons Co-operating with Them Being Citizens of Kansas, Defendants," and, after stating the submission of a motion for a temporary injunction, proceeds as follows: "It is therefore now here ordered that the defendants above named, and each of them, and all other persons who have or may combine, confederate, or conspire with said defendants, or either of them, are hereby severally and collectively temporarily enjoined and restrained from in any manner interfering with." etc. This injunctive order was never served on Reese. Afterwards, on October 18, 1899, the complainant filed in the case so instituted by it against Wright and others, hereafter called the "main case," what it calls a "motion to commit for violating injunction," and, among other things, sets forth that John P. Reese was a citizen of the state of Iowa; that he came to Crawford county, Kan., at the head of a column of about 300 men, commonly in the main case called "strikers," and interfered with the miners of the complainant, and trespassed upon its property, in violation of the commands of the injunctive order. Many charges of misconduct by Reese are found in the motion to commit, but there is no charge that he combined, confederated, or conspired with the defendants named in the original bill, or that he aided or abetted the defendants so named, or that he was the agent or servant of the defendants, or any of them. The whole scope of the motion is that Reese acted independently, combining with certain persons generally referred to as "strikers," to interfere with the operation of complainant's mine in such a manner as would, if he had been a defendant in the case, constitute a violation of the injunctive order. The prayer of the motion is for a rule against Reese to show cause why he should not be attached for contempt for violation of the temporary injunction. Upon the filing of this motion, the court made an order in the main case as follows: "Upon motion of said complainant, it is ordered that a rule be issued on John P. Reese to appear before this court on the 17th day of November, 1899, at 10 o'clock a. m., at its court room in the city of Ft. Scott, county of Bourbon, Kansas, to show cause why he should not be committed for contempt for violation of the temporary injunction heretofore ordered and issued in the above cause." Afterwards such proceedings were had that on November 27, 1899, the court made the following order: "This cause came on for a hearing, and on the motion of said complainant to commit John P. Reese for violating the temporary injunction heretofore, to wit, on the 18th day of July, 1899, granted in said cause, and upon the rule issued by said court in said action against said John P. Reese, and duly served on him, citing him to appear and show cause, if any, why he should not be attached for contempt in failing to obey the said order of injunction. Said John P. Reese appearing in person and by his attorney, O. T. Boaz. Said complainant appeared by J. H. Rogers, W. C. Perry, and C. E. Benton, its attorneys. And the court, having heard all the evidence introduced in behalf of and against said John P. Reese on said hearing, and being fully advised in the premises, finds that the charges made against said John P. Reese in said motion are true, and finds that said John P. Reese has violated said temporary injunction granted by this court as aforesaid, and finds that said John P. Reese is guilty of contempt of court.

It is therefore considered, ordered. and adjudged by the court that said John P. Reese be imprisoned in the jail of Bourbon county, in the state of Kansas, for the term of three months from this day," etc. This proceeding by habeas corpus was instituted by Reese after he had been committed to jail under the foregoing order of court, to secure his release on the ground that he had been deprived of his liberty without warrant of law, and by a court acting without jurisdiction for that purpose. The writ issued. The return of the ·jailer who had custody of the prisoner set up the foregoing facts and order of commitment as his justification. A hearing was had before Thayer, circuit judge, in the court below, and the prisoner was discharged. In re Reese (C. C.) 98 Fed. 984. From the order so discharging him the jailer duly prosecuted his appeal to this court, and assigned several different errors. The second, third, fifth, sixth, seventh, and eleventh assign, in different language, practically but one error, and that is that the court erred in holding that Reese was not a party to the suit in which the order of commitment was made, and that the injunctive order did not extend to him. The fourth is, in substance, that the court erred in holding that Reese was not amenable to the proceedings for contempt as an aider or abettor of persons who were the defendants in the main case. The other assignments, so far as they were urged at the hearing, were general in their character to the effect that the court erred in discharging the prisoner. It was also argued that the court below had no jurisdiction by the writ of habeas corpus to question the legality of the proceedings resulting in the order of commitment, but that such proceeding could only be reviewed by· appeal from the order.

J. H. Richards and W. C. Perry (Morris Cliggitt, T. N. Sedgwick, and C. E. Benton, on the brief), for appellant.

W. H. Rossington, for petitioner.

Before CALDWELL and SANBORN, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

We are relieved from a consideration of the assignments of error to the effect that the trial court erred in holding that Reese was not a party to the main case, and that the injunctive order made in that case did not extend to him. Neither the oral arguments nor briefs of counsel urge upon us any such consideration, and it appears as an agreed fact in the record that it was admitted at the trial below "that the order of injunction ran against citizens of the state of Kansas only, and that Reese, being a citizen of Iowa, was not within the terms of the order, and that he could not violate it." But it is earnestly contended by counsel for appellant that, although Reese was not a party to the main case, and as such bound by the obligation of the court's restraining order, he was, nevertheless, properly punished for contempt of court in knowingly aiding, abetting, and assisting the defendants in that case, in violating the order made against them, and for organizing and leading a body of men independent of the defendants, or either of them, to do the acts and accomplish the results which the court undertook to prevent by issuing the orders against the defendants in the case. In order that there may be no misunderstanding of the situation, it should be borne in mind that Reese was not charged in the motion for commitment with aiding, abetting, or assisting, or combining, confederating, or conspiring with the defendants, or either of them; neither was he charged with doing the acts complained of as their servant or agent. The substance of the

charge as made against Reese was that he did the acts complained of without any relation to or connection with the defendants, as an independent exercise of his own will. The theory of the complainant at the time of making the motion for commitment unquestionably was that Reese was a party to the suit. It accordingly charged him with doing what he did in violation of the injunctive order, and all the subsequent proceedings were in harmony with that theory. Now, it being conceded that he was not such a party, it is attempted to sustain the sentence of commitment on the broad ground that the petitioner, if not technically guilty of violating the injunctive order, was guilty of contemptuously obstructing the administration of justice by doing the things which other parties had been enjoined from doing, with knowledge of such injunctive order against them. In support of this contention we are directed to section 725, Rev. St. U. S. 1878, which is as follows:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: provided that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transaction, and the disobedience or resistance of any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

This section undoubtedly confers ample power upon the court to punish any person for intentional resistance to any of its orders. The word "disobedience" aptly applies to a party or other person against whom an order is made. The word "resistance" manifestly is applicable to a party to the suit, and may be applicable to "other persons" referred to in the section. It is entirely consonant with reason, and necessary to maintain the dignity, usefulness, and respect of a court, that any person, whether a party to a suit or not, having knowledge that a court of competent jurisdiction has ordered certain persons to do or to abstain from doing certain acts, cannot intentionally interfere to thwart the purposes of the court in making such order. Such an act, independent of its effect upon the rights of the suitors in the case, is a flagrant disrespect to the court which issues it, and an unwarrantable interference with and obstruction to the orderly and effective administration of justice, and as such is and ought to be treated as a contempt of the court which issued the order. Such contempts, however, are totally different offenses from those which the parties to the case commit when they disobey a direct order made in a case for the benefit of the complainant. The one is an offense against the majesty and dignity of the law. The other is a violation of the rights of a particular suitor, at whose instance and for whose protection the particular injunctive order disobeyed was issued by the court. The power to punish for contempt is not limited to cases of disobedience by parties to the suit of some express command or rule against them, but, subject to the limitations imposed by section 725, supra, is co-extensive with the necessity for maintaining the authority and dignity of the court. Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205; Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77, 32

107 F.—60

L. Ed. 405; Eilenbecker v. District Ct., 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801; In re Debs, 158 U. S. 564–596, 15 Sup. Ct. 900, 39 L. Ed. 1092; In re Rosser, 41 C. C. A. 497, 101 Fed. 562.

In the case of Seaward v. Paterson, 76 Law T. (N. S.) 215, decided by the court of appeal of England in 1897, an injunction was issued against Paterson to restrain him from holding glove fights or boxing contests on certain premises. One Murray, who had later acquired possession of the premises and conducted boxing contests thereon, was cited for contempt. It was answered that Murray was neither a party to the action nor an agent or servant of such party. The trial court (Lord North) adjudged Murray guilty on the distinct ground of knowingly aiding and assisting in doing that which the court had prohibited, and in so doing distinguished between that kind of contempt and that consisting of a disobedience to an order by a party to the suit in which the order was made. From the judgment of Lord North an appeal was taken to the court of appeal, and after full argument was decided by the three lords Lindley, Smith, and Rigby. Lindley delivered the main opinion. He approved the action of the trial court, and said, among other things:

"Murray was not a party, either first or last. Now, let us pause and consider upon what jurisdiction the court can proceed against Murray. There is no injunction against him. He is no more bound by that injunction than any other member of the public. He is, however, bound, like other members of the public, not to interfere with and not to obstruct the course of justice, and the case made against him must be this, if anything; not that he has technically infringed the injunction, which has not been granted against him in any sense of the word, but that he has been aiding and abetting others in setting the court at defiance, and deliberately treating the order of the court as unworthy of notice. If he has so conducted himself, it is perfectly idle to say that there is no jurisdiction to attach him for contempt as distinguished from a breach of the injunction which has a technical meaning. * * * The notice of motion to commit for breach of an injunction, which is technically wrong unless he is bound by the injunction, and a notice of motion to commit a man for contempt of court not because he is bound by the injunction by being a party to the case or anything of that kind, but because he is conducting himself so as to obstruct the course of justice, are totally different things. The difference is very marked. In the one case the party who is bound by the injunction is proceeded against. The proceedings against him are for the purpose of enforcing the order of the court for the benefit of the person who got the order. In the other case the court will not allow its process to be set at naught, and treated with contempt. The consequence is this: that in the one case the party who is interested in enforcing the order is enforcing it for his own benefit, while in the other case, if the order of the court has been contumaciously set at naught, he cannot settle it with the person so acting, and save that person the consequences of his act. The difference between the two kinds of contempt is well known, although in some cases there may be a little difficulty in saying on which side of the line they fall."

To the same effect is the case of Wellesley v. Earl of Mornington, 11 Beav. 181. This last case is cited with approval by Judge, now Mr. Justice, Brown, in Phillips v. City of Detroit, 19 Fed. Cas. 512 (No. 11,101); by the supreme court in Ex parte Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110; and by the United States circuit court in American Steel & Wire Co. v. Wire Drawers' & Die Makers' Unions Nos. 1 & 3, 90 Fed. 598; and in 2 Daniell, Ch. Prac. (5th Ed.) p. 1685. The same doctrine is, in effect, applied in cases in which the court has property in its possession through the instrumentality of a receiver

appointed by it. An unauthorized interference with the possession of the receiver by any persons, whether parties to the suit or not, is an unauthorized interference with property in the custody of the court, and is regarded as a contempt of the authority of the court, not because it is in violation of any direct express command against the person offending, but because it is an unjustifiable interference with the administration of justice, and tends to obstruct the court in the execution of its powers and maintenance of its authority. Beach, Rec. (Alderson's Ed.) §§ 250, 256; Cartwright's Case, 114 Mass. 230; Ex parte Tyler, 149 U. S. 164–181, 13 Sup. Ct. 785, 37 L. Ed. 689, and cases cited; In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092, and cases cited.

From the foregoing it is apparent that the offense of violating an express restraining order issued at the suit of a private litigant for his protection is one thing, dependent upon the actual existence of such restraining order against the person charged with the offense in a suit to which he is a party by name or adequate representation; and that the offense of a person not a party to a suit in aiding and abetting such a party to disobey or resist a restraining order against himself, or independently and intentionally preventing the execution of such order, and thereby thwarting the administration of justice, and contemning the authority of the court, is another, and essentially different, thing. Adverting again to the facts as disclosed in the preceding statement, it appears that the petition for a rule against Reese was presented to the court by the complainant in the main case as a remedy to which it conceived itself entitled. The petition charged Reese with violating the terms of the injunctive order made in the main case. He was ordered to show cause why he should not be punished for violating that order. The finding was that he had violated it. The judgment was that he be committed for violating it. It also appears that he was not only not made a party to the case by name or representation, but that the complainant intentionally and studiously avoided making him such a party. From these incontrovertible facts there can be no question as to the jurisdiction which was invoked and which was sustained in the proceeding to punish Reese, namely, that he had violated an express order of the court made in the case against him. There is nothing in the petition, order to show cause, or commitment remotely suggesting the purpose of the court to punish him for a willful resistance or disregard of the court's authority, or for interfering with or obstructing the course of justice otherwise than the same is involved in violating an express order of court alleged to have been made in the case against him. The petitioner had the right, therefore, accorded to him by the constitution of the land and time-honored precedent, to stand upon the accusation as made, and to defend against the charge as made, namely, that he had violated the injunctive order. He exercised that right, and, after being found guilty and imprisoned, immediately proceeded to challenge the lawfulness of his restraint for the reasons that he was not a party to the cause in which the injunction issued, and that the court was without jurisdiction to call him to an account for violating it. "Contempt of court is a specific criminal offense. The imposi-

tion of a fine is a judgment in a criminal case." City of New Orleans v. New York Mail S. S. Co., 20 Wall. 387, 22 L. Ed. 354; In re Swan, 150 U. S. 637–652, 14 Sup. Ct. 225, 37 L. Ed. 1207; Church, Habeas Corpus, § 308. Judge McCrary says in Vanzandt v. Mining Co. (C. C.) 48 Fed. 770, in treating of a case of interference with a judicial proceeding by a party not enjoined therein:

"A proceeding for contempt is in the nature of a criminal proceeding, and to be governed by the strict rules of construction which prevail in criminal cases. Its purpose is not to afford a remedy to the party complaining, and who may have been enjoined by the acts complained of. That remedy must be sought in another way. Its purpose is to vindicate the authority and dignity of the court."

It follows from these well-recognized principles that the petitioner was entitled to be informed of "the nature and cause of the accusation" against him, and to be tried on the charge as made, and on no other charge.

We entirely agree with counsel for appellant that it is not competent for a court in proceedings by habeas corpus to review the facts upon which the commitment was ordered, or the regularity merely of the proceedings which resulted in the commitment. If any error be committed in these respects, the remedy of the prisoner is by appeal from the order of commitment. But the conclusion reached in this case involves no such questions. The petitioner, not being a party defendant in the main case, was not subject to the jurisdiction of the court in that case, and the court had no authority to punish him for the offense as charged against him in the motion for commitment, and, a fortiori, no authority on that motion to punish him for some other offense not therein charged against him. This conclusion supersedes all further inquiry as to the availability of the writ of habeas corpus as a remedy to secure the discharge of the prisoner. Ex parte Ayres, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216, is direct authority for this conclusion. In that case certain parties sought to enforce an obligation of the state of Virginia by proceeding against certain of the state officers, who were afterwards held in contempt for disobedience of the orders of the court made in the case. The court held that the officers sued had no interest in the subject-matter involved; that the suit was really against the state of Virginia, and therefore within the prohibition of the eleventh amendment to the constitution, prohibiting suits by individuals against a state. The court, by Mr. Justice Matthews, says:

"When a court of the United States undertakes by its process of contempt to punish a man for refusing to comply with an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing for contempt is equally void; and that, when the proceeding for contempt in such a case results in imprisonment, this court will, by its writ of habeas corpus, discharge the prisoner. * * * All the proceedings in the exercise of the jurisdiction which [the court] assumed are null and void. The orders forbidding the petitioners to bring the suits for the bringing of which they were adjudged in contempt of its authority, it had no power to make. The orders adjudging them in contempt were equally void, and their imprisonment is without authority at law."

Mr. Justice Miller, in Ex parte Fisk, 113 U. S. 713, 718, 5 Sup. Ct. 724, 726, 28 L. Ed. 1117, 1119, says:

"When, however, a court of the United States undertakes by its process of contempt to punish a man for refusing to comply with an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing for contempt is equally void. It is well settled now in the jurisprudence of this court that when the proceedings for contempt in such a case results in imprisonment, this court will, by its writ of habeas corpus, discharge the prisoner. It follows, necessarily, that on a suggestion by the prisoner that, for the reason mentioned, the order under which he is held is void, this court will, in the language of the statutes, make inquiry into the cause of the restraint of liberty."

See, also, Ex parte Parks, 93 U. S. 18, 23 L. Ed. 787; Ex parte Rowland, 104 U. S. 604, 26 L. Ed. 861; Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872; Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; Ex parte Terry, 128 U. S. 304, 9 Sup. Ct. 77, 32 L. Ed. 405.

In the light of these cases, and many others cited in them, we entertain no doubt that the writ of habeas corpus was an appropriate remedy for the petitioner to secure his discharge from imprisonment. The judgment of the trial court is affirmed.

CALDWELL, Circuit Judge. I concur in the result, not alone on the grounds stated in the opinion, but on the further ground that the circuit court had no jurisdiction of the original case, and reserve the right to file an opinion to that effect.