GARRIGAN v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1908. Rehearing Denied June 4, 1908.)

No. 1,341.

1. INJUNCTION—VIOLATION—CONTEMPT—CIVIL OR CRIMINAL PROCEEDINGS.

Where, in a proceeding to punish respondent for contempt in violating a strike injunction, there was neither allegation nor proof of his relation to or privity with either of the persons enjoined prior to or apart from alleged acts in violation and contempt of such injunction, the proceedings were strictly criminal in their nature, under the rule that a proceeding for civil contempt obtains only for the benefit and enforcement of the rights of the parties to a suit, while proceedings for criminal contempt are to punish for acts in contempt of the power and dignity of court.

2. SAME—PROOF BY AFFIDAVITS.

Where a criminal contempt for violating an injunction is sought to be established by affidavits, the facts, to authorize a conviction, must be clearly established.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 514.]

3. SAME—STRIKE INJUNCTION—DUTY TO OBEY—PERSONS NOT PARTIES.

A person not one of the parties enjoined by a strike injunction, while not strictly chargeable for breach or violation of the injunction in the same sense as those terms are applicable to the parties, is nevertheless bound with other members of the public to observe its restrictions when known, to the extent that he must not aid or abet in its violation by others, nor set the known command of the court at defiance by interference with or obstruction of the known administration of justice, and if he does so the court's power to punish is absolute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 495.]

4. SAME—PETITION.

A petition for violation of a strike injunction by a person not a party, alleging in the alternative that respondent knew, or by the exercise of ordinary intelligence might have known, of the issuance of the injunction, was insufficient to charge him with knowledge thereof.

5. SAME—CRIMINAL CONTEMPT—PRESUMPTION OF INNOCENCE.

In a proceeding for criminal contempt in violating a strike injunction, respondent is entitled to the benefit of the presumption of innocence.

6. SAME—VIOLATION—KNOWLEDGE—EVIDENCE.

In a proceeding for a criminal contempt in the violation of a strike injunction, evidence *held* insufficient to warrant a finding that respondent

who was not a party to the original proceedings, had knowledge of the injunction, or that his act constituted a contempt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 514.]

**7. SAME.**

That respondent, a city fireman, assaulted a guard on one of petitioner's wagons during a strike, after the guard had been arrested and was in the custody of the city police authorities, and had therefore ceased to act as a guard, did not constitute a violation of a strike injunction, restraining persons from interfering with persons managing petitioner's horses, wagons, etc., in the conduct of its business.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For opinion below, see 141 Fed. 679.

The plaintiff in error, Daniel Garrigan, was adjudged by the Circuit Court guilty of contempt, in the violation of an injunctional order issued by that court, in aiding and abetting the parties enjoined and interfering with the business and employés under the protection of such order, and the proceedings and judgment are brought for review by this writ of error.

The judgment recites the proceedings and findings and reads as follows:

"It appearing to the court that on April 28, 1905, the Employers' Teaming Company filed its bill of complaint in equity in said court, in and for said district and division thereof, praying for an injunction, both temporary and permanent, and that on said April 28, 1905, on the application of said the Employers' Teaming Company, said court duly entered of record, in said chancery proceeding, a temporary stay and injunctional order, and that said the Employers' Teaming Company thereafter filed a petition in said chancery proceeding for a rule directing Daniel Garrigan to show cause by a short day why he should not be attached for contempt of said court for violating said temporary stay and injunctional order; and it further appearing to the court that affidavits were duly filed with and in support of said petition, and that upon the filing and presentation of said petition and affidavits, said Daniel Garrigan was duly ruled by said court, in said chancery proceeding, to show cause by May 31, 1905, at 10 o'clock a. m. why he should not be attached for contempt of said court for violating said temporary stay and injunctional order; and that said Daniel Garrigan was duly and personally served with a certified copy of said rule, and that he thereafter filed an answer thereto, supported by affidavits, and that rebuttal affidavits were filed by said the Employers' Teaming Company; and the court having heard and considered said petition, answer, and all said affidavits, and also oral evidence then and there offered in open court by said the Employers' Teaming Company and also by said Daniel Garrigan; and the court having heard the arguments of counsel for said respective parties, and being fully advised in the premises, and said Daniel Garrigan having been present in open court in person and by counsel at the hearing on said rule, and being also now here present in open court in person and by counsel—the court finds: That said Daniel Garrigan on May 2, 1905, in the city of Chicago, in said district, had full knowledge of the existence of said temporary stay and injunctional order and of the terms thereof, and with such knowledge did then and there knowingly, willfully, and intentionally violate said stay and injunctional order, and did then and there, with full knowledge of the existence of said temporary stay and injunctional order, and of the terms thereof, knowingly, willfully, and intentionally aid and abet the defendants, or some of them, to said bill of complaint in committing acts and grievances complained of in said bill of complaint and prohibited by said stay and injunctional order. And the court further finds that said Daniel Garrigan on the date and at the place last aforesaid, and with full knowledge of the existence of said temporary stay and injunctional order, and of the terms thereof, did knowingly, willfully, and intentionally and contrary to and in violation of the terms of said stay and injunctional order interfere with, hinder, obstruct, and aid and abet the defendants, or some of them, to said bill of complaint in interfering with, hindering, and obstructing **the** business of said the Employers' Teaming Company, and also its employés

and agents, while they were then and there engaged in the conduct and operation of its business; that said Daniel Garrigan has failed to show cause why he should not be attached and punished as for contempt of this court for violating said temporary stay and injunctional order; that said contempt has tended to defeat and impair the rights and interests of said the Employers' Teaming Company and to obstruct justice, and bring the administration of justice into contempt. Wherefore, the premises considered, it is hereby ordered, adjudged, and decreed that said rule to show cause be and the same hereby is made absolute. And it is further hereby ordered and decreed by the court that the said Daniel Garrigan was and is, and he hereby is adjudged, guilty of and in contempt of this court, and that said Daniel Garrigan stand committed to and be confined and imprisoned in the county jail of Du Page county, in Wheaton, in said county, in the state of Illinois, for any during the period of three months, unless he shall be sooner discharged therefrom by due process of law, and that a warrant of commitment do now issue in due form for the arrest forthwith of said Daniel Garrigan, directed to the United States Marshal for the Northern district of Illinois, and that, when arrested by said marshal, said Daniel Garrigan be committed to said jail, and that he be there held for the said period of three months, unless sooner discharged therefrom by due process of law, and that said term of imprisonment shall begin when said Daniel Garrigan is lodged in said jail, as herein provided."

The injunctional order referred to ran against various trade organizations and individuals, named as defendants in the bill filed by the Emloyers' Teaming Company—the plaintiff in error not being named therein, nor party of record in any form—and "each and every of the agents and servants of the said defendants and of each of them, and any and all other persons and associations now or hereafter aiding or abetting or confederating or acting in concert with said defendants or any or either of them, in committing the acts and grievances or any of them complained of in said bill of complaint," and restrained the commission of various acts, including the following: "Hindering, obstructing, or stopping any of the business of the complainant, the Employers' Teaming Company, in the maintenance, conduct, management, or operation of any of its business, barns, stables, horses, wagons, or properties of any kind in the city of Chicago; * * * also, from in any manner interfering with, hindering, obstructing or stopping the passage along and through the streets of said city of any of complainant's wagons, teams, or teamsters in and about the business of complainant; * * * and also from accompanying, following, talking with, or calling upon any person or persons employed by or doing business with said complainant against the express will of said person or persons, for the purpose of or in such manner as to intimidate, threaten, or coerce any such person or persons; * * * and also, either singly or in combination with others, from picketing, besetting, or patrolling any place or places where said complainant's employés, teams, wagons, stables, barns, or other property may be or happen to be in said city; * * * and also, from ordering, assisting, aiding, or abetting in any manner whatsoever any person or persons to commit any of the acts aforesaid." It further provided for service of the order upon and in respect of the defendants therein, and that it "shall be binding upon all of said defendants and all other persons whomsoever from and after the time they severally have knowledge of the allowance of this order."

Daniel L. Cruice and William H. Slack, for plaintiff in error.

Levy Mayer, for the United States.

Before BAKER and SEAMAN, Circuit Judges, and SANBORN, District Judge.

SEAMAN, Circuit Judge (after stating the facts as above). The plaintiff in error was not a party to the bill filed by the Employers' Teaming Company for injunctional relief, nor a member of either of the associations named as defendants therein, nor named in the re-

straining order whereof violation is averred in these contempt proceedings, and neither averment nor proof appears of his relation to or privity with either of the parties enjoined, prior to or apart from the alleged acts in violation and contempt of such order. Thus the proceedings and conviction which are brought for review under this writ of error are distinctly criminal in their nature, and reviewable in conformity with the established doctrine of such procedure. Bessette v. W. B. Conkey Co., 194 U. S. 324, 326, 24 Sup. Ct. 665, 48 L. Ed. 997; Matter of Christensen Engineering Co., 194 U. S. 458, 459, 24 Sup. Ct. 729, 48 L. Ed. 1072. Whatever of confusion appeared in the authorities, prior to the decisions above cited, as to the distinction in contempt proceedings between those of civil and criminal nature—the one remedial for the benefit and enforcement of the rights of parties to a suit, and the other to punish for acts in contempt of the power and dignity of the court—that classification has become the settled rule for testing the nature of the proceeding and reviewable questions.

The proceedings against the plaintiff in error were instituted by a petition filed by the Employers' Teaming Company, as complainant in the above-mentioned bill, averring, in substance, the issuance of the injunctional order referred to, its wide publication in newspapers in Chicago, and posting conspicuously on all the wagons of complainant which were engaged in the operation described, and stating "upon information and belief that each of the persons hereinafter named as respondents to this, its said petition, did at the time of the commission of the acts hereinafter complained of have full knowledge and notice of the issuance of said temporary stay or injunctional order, and knew, or by the exercise of ordinary intelligence might have known, of the issuance of said injunctional order." Thereupon the petition charges that the plaintiff in error (and numerous other persons named) "violated said injunctional order as aforesaid, at the time, place, and in the manner set forth in the affidavits of Solon W. Baxter" and seven other persons attached to and made a part of the petition. An answer was filed by the plaintiff in error, under a rule entered and served to show cause why he should not be adjudged guilty of contempt and after raising various objections to the petition and proceeding, which denies under oath commission of the several acts and offenses charged in the petition and affidavits, and denies knowledge or notice of the injunction, or violation thereof "intentionally or otherwise." Motion was made and denied to discharge the rule to show cause upon this sworn answer, and the case proceeded to hearing, with sufficient objections urged and saved on behalf of the plaintiff in error to raise the various propositions on which error is assigned.

The evidence upon which the conviction rests appears in a bill of exceptions, and consists mainly of ex parte affidavits, purporting to be made by witnesses of the occurrences in controversy—with a single witness, one Dimick, produced and testifying in open court—which affidavits were submitted on behalf of the parties respectively. In the opinion filed by the trial court it is aptly remarked that the

opposing affidavits, "as is usual in such controversies, were directly contradictory of each other"; and that, in "such irreconcilable conflict of testimony, it is often impossible to get a clue to the truth." While these affidavits concur in proving a case of mob violence during the attempted movement of complainant's teams and wagons through the streets of Chicago, and riotous interference with the persons guarding them, those introduced for the prosecution and defense are "directly contradictory" in all the facts bearing upon the issues involved, both in respect of the conduct of the parties, collectively and individually, engaged in the riot, and of the part and conduct of the plaintiff in error therein. Assuming, without deciding, that it was within the discretion of the trial court to hear the case upon such affidavits, instead of ascertaining the facts from testimony taken in open court, as was the course adopted in the Savin Case, 131 U. S. 267, 268, 9 Sup. Ct. 699, 33 L. Ed. 150, and mentioned as of course in United States v. Shipp, 203 U. S. 563, 575, 27 Sup. Ct. 165, 51 L. Ed. 319, the facts to authorize conviction must nevertheless be clearly established, and the affidavits introduced here exemplify the infirmity of such ex parte means for the "legal understanding" of facts in controversy intended by the rules of evidence.

In any view of the charges of contempt and evidence so received, it is unquestionable that the only issues of fact were: (a) Whether the accused had knowledge of the injunction; and, if such knowledge appeared, whether he committed acts, either (b) in aid of its violation by the parties enjoined, or (c) in plain defiance of its terms—and thus in contempt of the authority and commands of the court. As it is neither charged nor proven that the plaintiff in error was one of the parties enjoined, he is not chargeable for breach or violation of the injunction, in the well-recognized sense of those terms applicable to parties. He was bound, alike with other members of the public, to observe its restrictions when known, to the extent that he must not aid or abet its violation by others, nor set the known command of the court at defiance, by interference with or obstruction of the administration of justice; and the power of the court to proceed against one so offending and punish for the contemptuous conduct is inherent and indisputable. Seaward v. Paterson, 1 L. R. Ch. Div. (1897) 545, 554, 76 Law Times (N. S.) 215; In re Reese, 107 Fed. 942, 47 C. C. A. 87, 90. We believe the above-mentioned distinction in contempt proceedings, between disobedience of the injunction by parties and privies and the conduct of others in contempt of the authority and commands of the court, to be elementary, and the sufficiency of the evidence in the case at bar to support conviction must be tested thereunder. The question discussed in the briefs, whether the general averment in the petition that the plaintiff in error "violated said injunctional order," authorized reception of this evidence to establish either class of contempt relied upon for conviction, is not involved in our view of the effect of the affidavits, incorporated in the petition, that they aver such facts and furnish notice for the introduction. The petition is plainly defective, however, in the averments to charge the plaintiff in error with knowledge of the injunction—stating alternatively that he "knew, or by the exercise of ordinary intelligence

might have known, of the issuance"—but laying out of view for the present inquiry the objection raised thereupon, we proceed to consideration of the versions of fact on which the finding and conviction are predicated, to ascertain their bearing and sufficiency.

The present proceedings arose out of notorious conditions of mob violence which attended a strike in Chicago, known as the "teamsters' strike," in April and May, 1905. We are not authorized, however, to consider upon this review either the serious questions, public or private, which were involved, or the effect of the disturbances and violence upon the business and welfare of the community, as pressed to attention in the argument in support of the judgment. The issues to be determined are not of riotous and unlawful conduct, in attack upon the teams and guards, nor whether the testimony tends to show commissions of offenses by the plaintiff in error against the state and public, either by way of inciting a mob to acts of violence or in breaches of the peace. Such offenses are not within the cognizance of the trial court, and the judgment cannot rest on their commission, however convincing the proof may appear. While the "contempt proceeding is sui generis," it is distinctly criminal in its nature (Bessette v. W. B. Conkey Co., supra), and the accused is clearly entitled to the benefits of the common-law presumption of innocence, with its strict requirement of proof for conviction, although the pleadings may not be subject to the technical rules of the criminal law.

Taking up the affidavits introduced in support of the charges of contempt, they plainly state a vicious attack upon two teams of the complainant and the persons attending as guards, by a mob and individuals named, for the manifest object of obstructing the teams and injuring the guards. They identify the plaintiff in error as one of the assailants, "in the uniform of a city fireman," and state: That he was following up the teams and guards, in their passage through the street; that he was observed "throwing stones at the colored men guarding the teams," was swearing at the guards, "calling vile names," and cried out to the croud, to "hang the damned niggers"; and that he ultimately assaulted and struck one of the guards, after such guard was arrested by the city police force, was in their custody and either in a police wagon or "getting into it." The single witness, Dimick, called to testify upon the hearing, states only the last-mentioned assault upon the guard so arrested and in custody in the police wagon. These versions of fact, in substance—without a fact stated to connect the mob violence or individual attacks with parties named in the injunction, either as associations or individuals, or with express defiance of such injunction, and with no proof tending to show knowledge of the injunction or intent to defy its commands, aside from the alleged publications of the order in the public press and notices thereof borne upon the wagons thus interfered with—constitute the evidence upon which the plaintiff in error is adjudged guilty of contempt. On the part of the plaintiff in error, his presence when the conflict occurred is admitted, but his testimony is specific in denial of every act of violence or participation above mentioned, and he states, in substance, that his only part in the disturbance was to assist "the police to protect life and property," and that he did so assist in quelling the

riot and arresting rioters, in conformity with his understanding of his duty, as one of the city firemen. This version is supported by several affidavits, by policemen and other witnesses, and subsequent proceedings in the criminal court were introduced by way of corroboration. Further statements by these affiants, in reference to the conduct of persons acting as guards, are deemed immaterial in any view of the issues.

With the stories thus contradictory as to the participation and conduct of the plaintiff in error, we are impressed with the view indicated in the opinion of the trial court that it is difficult, to say the least, to ascertain the true version; but solution thereof is not involved here as a reviewable question. The findings by the court stated in the judgment are in general terms, in effect, that plaintiff in error, (a) with full knowledge of the injunction, (b) did willfully and in violation of its terms interfere with, "and aid and abet the defendants, or some of them, to said bill," in interfering with "the business of said the Employers' Teaming Company" and its employés and agents engaged therein, and (c) that he "has failed to show cause why he should not be attached and punished as for contempt." While we are not at liberty to refer to the opinion of the court for other or specific findings of fact, we assume for the purposes of the present inquiry that the above-mentioned statements of fact by the witnesses for the prosecution are adopted by the finding as the true version, and thus made conclusive here for the purposes of review; and it is further assumed that the deductions in the findings, as stated, amount to a finding of both of the classes of contempt above defined, namely, aiding and abetting violation of the injunction by a party, and contemptuous interference as an outsider. Thereupon, the question is presented whether these deductions are sustained by proof.

We are of opinion that each of the findings is unsupported, in any admissible view of the facts so established. The finding that the plaintiff in error had "full knowledge of the injunction"—a fundamental requisite for either charge of contempt—rests alone on the alleged publicity of the issuance, through newspapers and notices thereof which were posted on the wagons intercepted by the mob. No testimony appears of word or action on the part of the plaintiff in error, or in his hearing, in reference to the injunction; nor that his attention was directed to the wagons, their contents, or any notices thereon. He is clearly entitled to the benefit of "the presumption of innocence, as evidence in favor of the accused, introduced by the law in his behalf" (Coffin v. United States, 156 U. S. 432, 458, 460, 15 Sup. Ct. 394, 39 L. Ed. 481, reaffirmed in the recent opinion of this court in Dalton v. United States, 154 Fed. 461, 83 C. C. A. 317), which arises alike in respect of notice and conduct, as "an instrument of proof created in his favor"; and the mere inference of "full knowledge," derived solely from the above-mentioned facts, is without force, as we believe, to overcome the express denial of knowledge on the part of the accused, fortified by the presumption thus defined. The finding of such knowledge therefore is unsupported by the needful proof to authorize conviction and cannot be upheld under the fore-

going view. So the question whether the insufficient averment thereof in the petition constitutes reviewable error does not require solution.

Upon these premises therefore, that knowledge of the injunction is unproven, and that no proof appears that the plaintiff in error was engaged by or with any person or association enjoined in its violation, we are of opinion that the evidence fails to establish cause for his conviction of contempt of court, within either of the classes found and adjudged against him. The misconduct stated by the witnesses for the prosecution—in assailing and abusing the guards, who were protecting the movement of the teams, and inciting the mob to like interference—however criminal in its nature and disturbing in purpose and effect, thus standing alone, does not constitute contempt within either definition of such offense. Willful defiance and contempt of the authority and order of the court cannot be intended or committed without information that such authority has been exercised in the issuance of an injunction protecting the movement and services thus interfered with. Nor is the alleged misconduct brought within the finding of violation of the order, in aiding or abetting "the defendants, or some of them, to said bill of complaint, in committing the acts and grievances complained of," for the further reason that it does not appear in evidence that any such parties were engaged in the attack, directly or indirectly. In reference to the alleged subsequent assault upon one of the guards, when such guard was under arrest and in the custody of the police authorities, we deem it sufficient to remark that the guard was not then serving as escort, and any offense then committed was against the dignity of the state, and not that of the court issuing the injunction.

For want of evidence that the plaintiff in error was guilty of contempt of court in his alleged misconduct, the judgment of the circuit court is reversed, with direction to discharge the rule against the plaintiff in error.