## AARON v. UNITED STATES et al.

### (Circuit Court of Appeals, Eighth Circuit. June 29, 1907.)

#### No. 2,161.

**1. INJUNCTION—PERSONS BOUND—MISNAMING OF DEFENDANT.**

The fact that a defendant's first name was stated incorrectly in the pleadings, decree, and an injunction order does not relieve him from liability for contempt for violation of such order, where he was in fact served with process or appeared, and the circumstances were such that he could not have been misled as to the person intended.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 439–441.]

**2. CONTEMPT—SUFFICIENCY OF INFORMATION.**

The information in a proceeding for contempt is sufficient, if it clearly apprises the defendant of the nature of the charge against him, and no particular form is essential.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, § 146.]

**3. INJUNCTION—VIOLATION—CONTEMPT—PLEADING.**

A petition or motion for the attachment of a defendant for contempt in violating an injunction, which is entitled as in the original suit, and refers to the order of injunction granted therein by its date, and sets out in detail the alleged acts of violation, is sufficient, and need not set out the order in terms.

**4. CONTEMPT—INFORMATION—OBJECTIONS TO SUFFICIENCY—WAIVER.**

Where a party charged with contempt appears and goes to trial without objection to the sufficiency of the information and affidavits by appropriate motion, such objection is waived.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, § 147.]

**5. ATTORNEY AND CLIENT—AUTHORITY OF ATTORNEY—PRESUMPTION.**

The entry of appearance for a defendant by an attorney is presumed to have been authorized, and, to relieve himself from the effect of such appearance, such defendant has the burden of proving to the satisfaction of the court that it was unauthorized.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 94, 95.]

**6. WITNESSES—PRIVILEGED COMMUNICATIONS—LETTERS FROM ATTORNEY TO CLIENT.**

·A letter written by an attorney to his client, advising him of the terms of an injunction granted against him in a suit in which the attorney is employed, is not a privileged communication, since it contains nothing in the way of a confidential disclosure, and it is admissible in evidence to show actual notice of the injunction by the client.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 753, 763.]

**7. WRIT OF ERROR—FEDERAL PRACTICE—NECESSITY FOR MOTION FOR NEW TRIAL.**

A motion for a new trial is not essential in a federal court to entitle a party to a review of the judgment on writ of error by the Circuit Court of Appeals.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

See 128 Fed. 770.

David Goldsmith, for plaintiff in error.

George F. McNulty, James A. Seddon, and R. A. Holland, Jr., for defendants in error.

Before HOOK, Circuit Judge, and PHILIPS, District Judge.

PHILIPS, District Judge. This is a contempt proceeding, in which the plaintiff in error was fined $250 and costs, growing out of the following state of facts:

In December, 1903, various railroad companies, including the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, filed bills in equity in the United States Circuit Court for the Eastern District of Missouri against several so-called railroad ticket "scalpers," to enjoin them from dealing in that class of tickets being and to be sold by said railroad companies as round-trip tickets to and from the Louisiana Purchase Exposition, at St. Louis. One of the suits by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company was instituted against Bennett Wasserman, Wasserman & Co., a corporation, and A. Aaron et al. The subpœna issued in this case was not served personally on the defendant Aaron; but on the return day the defendants, including Aaron, appeared by counsel, Judson and Green and others, and by written stipulation with complainants' solicitors consented that a temporary injunction be ordered by the court, without prejudice to put in contestation the truth of the allegations of the bill and the right to the relief prayed for on final hearing. Accordingly, on the 29th day of April, 1904, Circuit Judge Adams presiding, the court entered a temporary injunction, enjoining the defendants "and each of them, and also their agents, servants, employés, attorneys and all persons acting by or under their authority or direction, or the authority or direction of either of them, during the pendency of this suit, from buying, selling, dealing in or soliciting the purchase or sale of any signed contract nontransferable reduced rate ticket or tickets, or any part thereof, or any coupon thereof hereafter issued in good faith by said complainant, or by any other connecting railroad company for use over the road or roads of said complainant, its lines or any part thereof, issued on account of the Louisiana Purchase Exposition or World's Fair, to be held in the city of St. Louis, Missouri, in the year 1904, which tickets are by their terms nontransferable reduced fare tickets, and from soliciting, advising or urging persons other than the original purchaser thereof to use or attempt to use said tickets or any part thereof, on any train or trains on any lines of road of said complainant."

On the 30th day of July, 1904, the complainant in said suit presented to the Honorable Walter H. Sanborn, one of the circuit judges of said court, a petition for an attachment in contempt against said Wasserman & Co., Bennett Wasserman, and A. Aaron, for having violated said injunction order. The offense charged consisted in the "scalping" and sale of such ticket sold on behalf of the complainant, by the Erie Railroad Company, at the city of New York, on the 22d day of July, 1904, to one L. Goldman. The defendant, Aaron, made return to the writ by the name of Lewis Aaron, as his true name, and

therein set forth as an answer to the writ: (1) That the information upon which the said order to show cause was granted, as also the affidavits filed in support thereof, failed to show that the said Aaron had been guilty of any violation of the order of injunction theretofore entered in said cause; (2) that said order of injunction was not served upon him, and he had no knowledge of the same or any of the proceedings in the cause theretofore.

The answer further stated and admitted that, as an employé of Wasserman & Co., he, the said Aaron, did undertake to sell the ticket which had been issued to said Goldman, and that being informed that said ticket had not been honored, but had been taken up at the Union Station in the city of St. Louis, subsequently refunded the amount of money, to wit, $14, which he had previously received from said person, but denied generally the other averments in said information.

The assignments of error are that the information for the attachment is insufficient, for the reason that it does not show service of the order of injunction upon the defendant and knowledge on his part thereof, and because the record fails to show such service; and (2) that there was no competent evidence that the sale of the ticket in question was in violation of the injunction, and that the offer of the ticket in evidence should have been rejected; (3) that the court erred in admitting in evidence the letter written by Mr. Judson.

While the defendant was impleaded by the name of "A. Aaron," the trial court found that there was sufficient evidence to show that sometimes he was known, especially to some of the police force of the city of St. Louis stationed in the vicinity of the office where he conducted his business, by the name of A. Aaron; and there is no ground for permissible contention but that he was the identical Aaron proceeded against in the original bill of complaint, and the person had in view in the contempt proceedings. The evidence shows that he was the only Aaron connected with the business of Wasserman & Co. in the sale of such tickets at St. Louis; that he was the vice president of the company, and the active agent therefor, and the identical Mr. Aaron who obtained from Goldman the ticket in question and sold it to one Ernst F. Barthel. It could not therefore be held that he was misled, or that he was not a party in fact to the proceeding.

The second objection goes to the sufficiency of the petition or motion for attachment. It is urged that the petition is defective in not sufficiently referring to the original bill of complaint and reciting the terms of the injunction order alleged to have been disobeyed. The petition is entitled as in the original bill of complaint. It charges that the defendant violated and disobeyed the temporary injunction heretofore granted by the court against the defendants in the suit, including Wasserman & Co., Bennett Wasserman, and said Aaron, granted on the 29th day of April, 1904, in pursuance of the stipulation entered into by all the parties to the cause. It then sets out with particularity the issuing to, and the purchase of the ticket in question by, said L. Goldman, who traveled thereon from the city of New York to St. Louis, and the purchase thereof by said Wasserman & Co., Bennett Wasserman, and said Aaron, and the sale by them of the return portion of said signed contract of the nontransferable reduced rate rail-

road ticket on the 25th day of July, 1904, at the city of St. Louis, Mo., for the price of $14, to one Ernst F. Barthel. It then sets out the provisions of the contract on said ticket. The petition was sworn to by one Deppe, alleging that the matters and facts set forth therein are true as he verily believes. It was also accompanied by the affidavits of witnesses, specifically charging the facts upon their own knowledge.

It is now the recognized rule that the information in a contempt proceeding is sufficient if it clearly apprises the defendant of the nature of the charge against him, and no particular form is necessary. Spelling on Injunctions, § 1121. As the defendant is alleged to have been a party to the suit and the injunction order, and appeared thereto, he was sufficiently advised of the provisions thereof, and the precise order he was charged to have violated; and the affidavits filed therewith, in support of the writ, fully described the offense. If the information for the writ was defective in matter of form, it should have been taken advantage of by the defendant in proper manner by motion before going to trial. Where the party charged with the contempt appears without objection to the sufficiency of the information and affidavits by appropriate motion, but answers and goes to trial, the objection is deemed as waived. Davis v. State, 31 Neb. 252, 47 N. W. 854; Zimmerman v. State, 46 Neb. 14, 64 N. W. 375; People ex rel. Barnes v. Court of Sessions, 147 N. Y. 295, 296, 41 N. E. 700; Enc. of Pl. & Prac. vol. 4, p. 786.

It is further contended that the injunction order was not served on the defendant, and that he had no knowledge thereof. It is conceded that, if the defendant was in court when the temporary injunction was granted, this objection is not good. His contention, however, is that he never authorized Judson and Green, and others, to appear and represent him in the original suit in which the temporary injunction was granted. The authority of an attorney or counsellor to appear in court as the representative of a litigant is no longer required to be expressed by the filing of his warrant of attorney. In the early case of Osborn v. United States Bank, 9 Wheat. 738, 830, 6 L. Ed. 204, Chief Justice Marshall expressed the rule, now universally recognized, as follows:

"Certain gentlemen, first licensed by government, are admitted, by order of court, to stand at the bar, with a general capacity to represent all suitors in the court. The appearance of any one of these gentlemen in a cause has always been received as evidence of his authority; and no additional evidence, so far as we are informed, has ever been required. This practice, we believe, has existed from the first establishment of our courts, and no departure from it has been made in those of any state, or of the Union."

Presumptively, therefore, the counsel who appeared for the defendant were authorized to do so, and the burden rested upon him to show to the satisfaction of the court the nonexistence of this authority. Enc. of Plead. & Prac. vol. 2, p. 682. Mr. Judson, the leading and active counsel for the defendants in the original suit, testified that he certainly would not have appeared for any defendant without feeling well assured that he was authorized thereto; that there were a large number of like suits instituted by various railroads concerned against the so-called dealers in such alleged transactions; that his law firm was em-

ployed by a committee representing such parties to appear and defend for them; that Bennett Wasserman, the then president of the corporation, of which the defendant, Aaron, was vice president, visited and talked with him about the case. As the defendant was vice president of the company, and its active agent in the purchase and sale of such tickets, it is incredible, in view of the evidence that the public press of the city of St. Louis was publishing and discussing the injunctive proceedings against the "scalpers," that this defendant was not advised by Wasserman of these proceedings. No impartial mind can read the cross-examination of this defendant, with its studied lack-candor, evasive answers, without the conviction that he was rather concealing than telling the whole truth. His conduct connected with the transaction of the sale of the Goldman ticket shows that he was conscious of violating the law and cunningly contriving to evade detection. At the time he sold the ticket to Barthel he directed him to practice a deception on the agents of the railroad company by being cautioned, if questioned by them, to answer that his name was L. Goldman, and that when he left the "scalper's" office not to go direct to the railroad station, but to pass around the corner, so that if any watcher should be standing on the outside of the office he might avoid detection. It is quite evident from the opinion of the learned trial judge who sat in the hearing of this case that he discredited the testimony of the defendant touching this issue of fact, and we are of opinion that he was justified therein.

Moreover, immediately after the granting of the injunctive order, Mr. Judson, as counsel for the defendants, addressed and mailed a letter to said Wasserman & Co., advising it of the granting of the injunction against it, and said Lewis Aaron and others, stating, among other things:

"That the injunctions are against your successors and assigns as well as against your servants and agents. * * * We can only add that while we regret that situation, and have spared no efforts to prevent it, we now feel it our duty to call your attention to the injunction, and to warn you of the very serious consequences of their violation. There is only one course to pursue in the case of an injunction, however erroneous or oppressive it may be; and that is, to obey it until it is set aside."

As the defendant, Aaron, was the active manager in charge of the office of Wasserman & Co., it is asking too much of credulity to believe that such advice coming to that office could have escaped the keen eyes of this wide-awake, active agent. He never complained to Mr. Judson that he was not his counsel.

The admission of this letter in evidence is assigned for error, on the ground that it was a privileged communication. This contention is remarkable for this party to make in view of his denial that the relation of attorney and client existed between him and Judson. He protests too much. Had he conceded that Judson was his counsel, there would have been no occasion for the introduction in evidence of this letter, as Judson's appearance to the suit and consent to the order of injunction would have concluded him as to notice thereof. Having denied such notice, the letter addressed to the company, of which he was vice president and active agent, was competent on the ground that it was a circumstantial fact contributing to the proof of his knowl-

edge that Judson was acting as counsel for him. On the other hand, if he had conceded that Judson was his counsel, the letter was harmless. The letter contained nothing more than information imparted to him by counsel of what the court record itself showed. Such a communication is not within the spirit of the statutory exemption as being privileged. It was not a fact which was communicated by counsel which came to the possession of counsel alone by reason of the relation of attorney and client. The rule of the statute "does not extend to the protection of matter communicated not in its nature private or which cannot properly be termed the subject of a confidential disclosure." Beeson v. Beeson, 9 Pa. 301, approved in Schaaf·v. Fries, 77 Mo. App. 359; Greenleaf, Ev. (16th Ed.) § 244.

Other questions are suggested by counsel for plaintiff in error, some of which are not specified in the assignment of errors; and, as they in no degree affect the conclusion reached on the law of the case, no practical end can be subserved by further discussion. It may be properly added, however, that the contention of the defendants in error that the right to have the sentence of the Circuit Court reviewed by this court should be conditioned upon a motion for new trial in the court below and the overruling of the same (citing Zimmerman v. State, 46 Neb. 15, 64 N. W. 375), is not tenable. A motion for new trial is not essential in this jurisdiction to entitle a party to a review by the Court of Appeals. This has been so repeatedly decided as not to·require the citation of authorities. The writ of error in this case was the proper remedy. Bessette v. W. B. Conkey Company, 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997.

It results that the judgment of the Circuit Court must be affirmed.