### In re McCORMICK et al.

### TYPOTHETÆ OF CITY OF NEW YORK v. TYPOGRAPHICAL UNION NO. 6 et al.

(Supreme Court, Appellate Division, First Department. May 7, 1909.)

1. CONTEMPT (§ 40*)—PROCEEDINGS—NATURE.

A proceeding to punish for criminal contempt, under Code Civ. Proc. § 8, while relating to acts styled criminal, is a civil special proceeding.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 124; Dec. Dig. § 40.*]

2. CONTEMPT (§ 60*)—PROCEEDINGS—DEGREE OF PROOF.

In contempt proceedings, the person proceeded against is entitled to the benefit of any doubt which may exist by reason of the form of the statute under which punishment is invoked, or in the form of the order which it is claimed he had disobeyed, so far as a doubt is thus cast upon the fact of the prohibition of an act claimed to have been committed; but as to the degree of proof the civil character of the proceeding controls, and, while the fact to be proved may involve the finding of the commission of a crime, the fact is to be determined upon the preponderance of the evidence, giving proper regard to the existence of the presumption of innocence.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 182-187; Dec. Dig. § 60.*]

3. TORTS (§ 10*)—REFUSAL TO WORK FOR CERTAIN EMPLOYERS.

Former servants are guilty of no violation of law, nor of disregard of the rights of others, in merely refusing to work for employers connected with a certain association.

[Ed. Note.—For other cases, see Torts, Dec. Dig. § 10.*]

4. MASTER AND SERVANT (§ 338*)—INTERFERENCE BY THIRD PERSONS—INTIMIDATION OF SERVANTS.

An attempt by striking servants to prevent the employment of others by their former employers as a means of winning a strike is unlawful, if efforts of a coercive character amounting to more than peaceable persuasion are invoked.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 338.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. INJUNCTION (§ 223*)—RESTRAINING INTIMIDATION BY STRIKERS—VIOLATION.
   If the officers of a trade union, whose members were on a strike and
   had been enjoined from intimidation, countenanced acts of intimidation
   by the members, and refrained from using the means of preventing those
   acts which they possessed, so far as good faith would suggest, they would
   be guilty of violating the injunction.
   [Ed. Note.—For other cases, see Injunction, Dec. Dig. § 223.*]

6. INJUNCTION (§ 223*)—RESTRAINING TRADE UNION—COMPLIANCE BY OFFICERS
   —NOTICE TO MEMBERS.
   Where striking members of a trade union were enjoined from committing
   acts of intimidation, the union's officers, by merely causing the reading
   of the injunction at a union meeting attended by a relatively small por-
   tion of the members on·two or three occasions, did not fully comply with
   the injunction.
   [Ed. Note.—For other cases, see Injunction, Dec. Dig. § 223.*]

7 INJUNCTION (§ 230*)—VIOLATION—EVIDENCE.
   Evidence *held* to show that officers of a trade union, the members of
   which had been enjoined while on a strike from committing acts of intim-
   idation, did not use reasonable efforts to cause the injunction to be obey-
   ed by the union members, and that their omission was colored by bad
   faith.
   [Ed. Note.—For other cases, see Injunction, Dec. Dig. § 230.*]

   Laughlin, J., dissenting in part.

Appeal from Order Confirming Report of Referee.

Action by the Typothetæ of the City of New York against Typo-
graphical Union No. 6 and others. In the matter of the punishment
of Patrick H. McCormick and others for criminal contempt ·for vio-
lating an injunction order. From an order confirming a referee's
report, certain defendants appeal. Affirmed.

See, also, 117 N. Y. Supp. 144.

The following is the opinion of Wiener, Referee:

This proceeding was instituted to punish the respondents for a criminal con-
tempt, under section 8 of the Code of Civil Procedure, for willful disobedience
of an injunction order granted in the action of the Typothetæ of the City of
New York against Typographical Union No. 6 and others, whereby the union
and its officers, members, agents, servants, and associates, as well as the de-
fendant individually named, were enjoined and restrained from inducing or
coercing, or attempting to induce or coerce, by any species of intimidation,
threats, force, or fraud, any employé of the plaintiff, or any of its members,
to quit the employment of the plaintiff, or any of its members, who were by
the order specifically named, and from preventing or attempting to prevent,
by any species of intimidation, threats, force, or fraud, any person from en-
tering the employ of the plaintiff, or of its members, from any and all acts of
intimidation, threats, force, or fraud toward any employé of the plaintiff, or
any of its members, and from all unlawful interference with the property,
property rights, or business of the plaintiff, or any of its members. The ne-
cessity for the injunction grew out of disturbances which had occurred in the
course of a strike declared by the defendant union against the members of the
plaintiff corporation, who were employers of labor, and the present proceed-
ing is based upon certain alleged violations of that injunction.

While the inquiry relates to acts styled criminal, the proceeding is not a
criminal action. It is a civil special proceeding (People ex rel. Negus v.
Dwyer, 90 N. Y. 402; Matter of Typographical Union No. 6, 117 N. Y. Supp.
——), and the question of guilt or innocence—the issue to be determined—must
be resolved in accordance with the rules of proof applicable to civil cases. In
contempt proceedings, the party proceeded against is entitled to the benefit

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of· any doubt which may exist by reason of the form of· the statute under which punishment is invoked, or in the form of the order which it is claimed he has disobeyed, so far as a doubt is thus cast upon the fact of the prohibition of an act which is claimed to have been committed (Van Valkenburgh v. Doolittle; 4 Abb. N. C. 72; Sutton v. Davis, 64 N. Y. 633; Weeks v. Smith, 3 Abb. Prac. 211; Potter v. Low, 16 How. Prac. 549); but upon the question of the degree of proof to be looked for to support the fact of the commission of an act in such a proceeding as this, where the inhibition is clear, the court is to treat the case in its aspect of a civil, as distinguished from a criminal, proceeding. It is the character of the proceeding itself which controls upon this question, and, while the fact to be proven may involve the finding of the commission of a crime, that fact, in a civil case such as this is, is to be determined upon the preponderance of the evidence, giving proper regard to the existence of the presumption of innocence when determining the weight of the evidence; but the fact of guilt need not be found beyond a reasonable doubt. N. Y. Ferry Co. v. Moore, 102 N. Y. 667, 6 N. E. 293. The order of reference specifies the alleged violations to which the inquiry before me is directed. Certain of these specifications have not been supported by prima facie proof, and have been dismissed upon the hearing. As to the specifications upon which proof has been given, the question for my determination is one of intent, in the main; and, where the testimony is in conflict, resort must be had to the probabilities as found in the circumstances which surrounded the alleged acts of intimidation upon the part of the persons who are charged with violation of the injunction order, whether these persons are members of the defendant union or its executive officers.

The occurrences which are the subject of this proceeding covered a period from March 2, 1906, to April 26, 1906, at a time when the members of the defendant union were engaged in a strike against the employers, who, as associated, formed the plaintiff corporation. Needless to say, the defendant members were guilty of no violation of law, nor of disregard of the rights of others, in the mere refusal to work for employers associated with the plaintiff, if they saw fit. But an attempt to prevent employment of others as a means to better success in the strike was not lawfully open to this union or its members, if efforts of a coercive character amounting to more than peaceable persuasion were invoked. The injunction was aimed against intimidation, and a violation of that injunction is to be found in the case of the defendant's officers, if they countenanced acts of intimidation, and refrained from using the means of preventing those acts which they possessed, so far as good faith would suggest. If animated by an intention to permit violations of the injunction, the defendant's officers could readily accomplish that intention by encouraging acts of intimidation, although making a formal order that intimidation .should cease, since the spirit in which such an order was given could be understood from the attitude of the officers and from the withholding of all disciplinary measures upon disobedience. The mere form of words would be of slight importance, if the order given was expected to. be disobeyed, and the real intent is the controlling factor. Here the defendant's officers caused the injunction order to be read at a meeting of members on two or three occasions; but it appears from the proof that these meetings certainly could not be attended by all the members, nor was such notice given of the purpose of the meetings as would apprise members of the fact that any matter of special importance was to be considered or brought to their attention. If the injunction order, when read at the meetings, was so treated by those reading it as to suggest an intention that it was to be obeyed, doubtless the persons who attended the meetings were sufficiently apprised of the fact that their future deportment in this strike was to be regulated within the four corners of the order; but if the reading of the injunction took on the appearance of a mere compulsory act, the force of the notice thus given would, of course, be lessen- .ed. An issue as to the manner in which this act of reading was performed could not, in the nature of things, be very seriously litigated upon the present hearing, since the proof would be all in the hands of the respondents, whose .associates made up the meeting. It is enough to say that the fact of reading the injunction order at meetings of the members of the union was not, of itself, the measure of the duty of the officers in the matter of obeying the or-

der of the court, and the question of the real intent of the parties is to be determined with regard to such circumstances as may serve to throw light on the actual working of their minds.

In two instances, at least, it appears that the officers of the union so acted as to afford vital encouragement to such of their members as were disposed to continue in the paths of violence. Lewis, after many charges of assault, was retained as a picket, and, when subsequently convicted and fined for an assault committed three weeks after the injunction was granted, his fine was paid by the union. Anderson, a picket who had been held for trial for an assault before the injunction was granted, continued in his duties as a picket, notwithstanding his continued violence, which was brought to the attention of the defendant's officers, and for which, on April 19, 1906, he was in form suspended from his duties, but was shortly afterwards reinstated as a picket. In the case of many of the instances of assault or of attempted intimidation by individuals who were members of the defendant assigned to picket duty, I have found in my report that these individuals had no knowledge of the injunction; but the fact that they were permitted to undertake the duties of pickets, unadvised of the order of the court, is a circumstance which cannot harmonize with an intention upon the part of the officers of the union that the court's directions should be obeyed. All these pickets received weekly compensation from the union at a designated place, where they regularly attended, and the officers of the union had full power to discharge them, to subject them to discipline, and to withhold pecuniary benefit from them. There was thus ample and convenient opportunity to give individual notice to the pickets of the fact of the injunction, yet none was given, and from the very nature of the services that these members were supposed to perform, in view of many previous acts of violence which had led to the granting of the injunction, it is quite obvious that further acts of intimidation were to be expected if the injunction was not brought clearly to their attention. The officers of this union were charged with the duty of obeying the injunction and of preventing a violation by those under their control, so far as this could reasonably be accomplished in simple good faith. Upon the facts in evidence I must hold that the omission by these officers of reasonable endeavors to cause this injunction to be obeyed was colored by bad faith, and that the mere reading of the injunction at a meeting attended by a relatively small portion of its members, while the single effective means of preventing its violation by those really concerned was not employed, amounted to no fulfillment of their legal duty.

Obedience, in good faith, not appearance of compliance, to mask a desire and intent to evade the order, was the measure of the duty cast upon the defendants' officers, and the only measure, if the authority of the court is to have practical expression. The evidence given before me discloses a violation of this duty, and I have, accordingly, reported favorably to the petitioner upon the matters involved in the twentieth specification as contained in the order of reference. My finding upon specifications Nos. 1, 2, 3, 4, 5, 6, 8, 9, 14, 16, and 17 is based upon what has impressed me as the more credible evidence of the circumstances of the alleged acts of intimidation, in view of the demeanor of the witnesses and of the probabilities as they appear from the evidence in general.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

Alfred J. Talley, for appellants.
Robert C. Beatty, for respondent.

PER CURIAM. Order affirmed. All concur as to appellants Anderson and Bennett, and all concur as to the other appellants, excepting LAUGHLIN, J., who dissents; he being of opinion that the adjudication is based solely upon the failure of the appellants who were officers of Typographical Union No. 6 to inform the individual members of the union, who are adjudged to have done acts forbidden by the injunction order, of the fact that the injunction order had been

issued, and that in the circumstances, the court not having expressly required them to notify the members of the union of the issuance of the injunction order, such failure is insufficient to sustain a conviction for a willful violation of the mandate of the court, which is essential to sustain an adjudication for criminal contempt.

Should any appellant desire to have the order reviewed by the Court of Appeals, a stay of proceedings will be granted pending such review.