PHILLIPS SHEET & TIN PLATE CO. v. AMALGAMATED ASS'N OF IRON,
STEEL & TIN WORKERS et al.

(District Court, S. D. Ohio, E. D.  September 27, 1913.)

No. 12.

1. INJUNCTION (§ 228*)—CONDUCT CONSTITUTING VIOLATION—DIRECTING OFFICERS OF LABOR STRIKE.

The directing officers of a labor union whose members are on a strike and have been enjoined from intimidation will themselves be deemed guilty of a violation of the injunction if they do not prevent, if they reasonably can do so, its violation by those under their control, or if they countenance acts of intimidation and refrain from using, so far as good faith would suggest, the means which they possess of preventing such acts.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 484-495; Dec. Dig. § 228.*]

2. INJUNCTION (§ 230*)—CONTEMPT—NATURE OF PROCEEDING FOR PUNISHMENT—"CRIMINAL PROCEEDING."

A proceeding against members of a labor union to punish them for contempt for prosecuting a criminal conspiracy to violate an injunction granted by the court in a civil suit restraining the defendants therein from interfering with the business and employés of the plaintiff, to which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

suit the persons proceeded against were not parties, is a criminal proceeding.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 502–516; Dec. Dig. § 230.*

For other definitions, see Words and Phrases, vol. 2, pp. 1751–1753; vol. 8, p. 7623.]

3. INJUNCTION (§ 230*)—CONTEMPT—PROCEEDINGS FOR PUNISHMENT—PLEADINGS.

To authorize remedial relief to the complaining party in a proceeding for contempt for violation of an injunction granted in a civil suit and at the same time to vindicate the authority of the court by fine or imprisonment, there must be a complaint which lays the foundation for both compensation and punishment and evidence which shows that the accused is a party defendant in the main case against whom the injunction ran.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 502–516; Dec. Dig. § 230.*]

4. CONTEMPT (§ 50*)—FORM OF PROCEEDINGS—WAIVER OF DEFECTS.

The jurisdiction of the court is not affected in a contempt proceeding by the form of the charging papers, and while proceedings for a criminal contempt in a federal court should properly (though not necessarily) be in the name of the United States as the charging party, or be entitled "In re ———," where such proceedings for violation of an injunction granted in a civil suit are instituted by motion entitled in the main case, the defect is waived if the accused goes to trial without objection and is given a full hearing on the merits of the charge.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 137–139; Dec. Dig. § 50.*]

5. INJUNCTION (§ 230*)—CONTEMPT—PROCEEDINGS FOR PUNISHMENT—CRIMINAL CONTEMPT—ATTORNEYS CONDUCTING PROSECUTION.

A proceeding for contempt in a federal court for violation of an injunction granted in a civil suit, although for a distinctly criminal contempt, need not be prosecuted by the district attorney but may properly be conducted by the attorneys for the complaining party.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 502–516; Dec. Dig. § 230.*]

6. CONTEMPT (§ 54*) — PROCEEDINGS FOR PUNISHMENT — CHARGING PAPER — WAIVER OF DEFECTS.

The charging paper in a proceeding for contempt must not be defective in substance but must show on its face facts sufficient to constitute a contempt and to justify the relief sought and must also have an appropriate prayer, and defects in such respects are jurisdictional and not waived by the accused by going to trial without objection.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 143–149; Dec. Dig. § 54.*]

7. WORDS AND PHRASES—"PROPER."

"Proper" means consistent with propriety, appropriate, or suited to.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5687, 5688.]

In Equity. Suit by the Phillips Sheet & Tin Plate Company against the Amalgamated Association of Iron, Steel & Tin Workers and others. Proceedings for contempt against various persons for violation of injunction. On final hearing. Proceedings dismissed.

P. P. Lewis, of Steubenville, Ohio, and Karl E. Burr, of Columbus, Ohio, for complainant.

Belcher & Connor, of Columbus, Ohio, and Jay S. Paisley, of Steubenville, Ohio, for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SATER, District Judge.   At the close of the hearing the accused in three of the contempt proceedings were dismissed.   The charges against two others were held to be sufficiently proved, but no order was entered regarding them because their respective cases were taken under advisement along with others submitted at the same time.   None of the defendants prior to or in the progress of the trial challenged in any respect the sufficiency of the charges, or the form in which they were preferred, or the entitlement or prayer of the motions, or raised a query as to whether the proceedings were civil or criminal.   The court did not therefore then make the critical examination of the moving papers which a detailed study of the submitted cases required. The result of such study was a request that counsel argue orally and on brief certain specific questions and any others by them deemed deserving.   This was done.   Considering the existing condition, the atmosphere may be clarified by an expression of views on practically every contention made.

The claim that the troubles considered in the contempt proceedings are attributable to the guards employed by the plaintiff is mere assertion and barren of support from the evidence.   Some of the acts of violence were openly and others were impliedly admitted;   the effort of the defense being to affix the responsibility for them on other than the accused.   The troubles which have been aired in these contempt proceedings originated with strikers and strike sympathizers, and in every instance the aggressor was the one or the other.   With one exception the accused are all union men.   There have been some manifest exhibitions of lawlessness and disregard of the temporary injunction heretofore granted, which injunction ran against not merely the defendants named in the bill, but also against the members of the respective unions, their agents, confederates, aiders, and abettors.   The assault on unoffending Kia, in which his nose was broken, was unprovoked, cowardly, and brutal.   Of all the strikers and sympathizers that were present when it occurred, not one entered a protest or endeavored to bring the assailant to justice.   When called upon to point him out, they protected him by standing mute.   Some of them appeared here as witnesses to screen the guilty party.   The court was impressed at the hearing with the appearance, first in one case and then in another, of certain overindustrious witnesses and always to prove an alibi or its equivalent.   The assaults which were the most reprehensible and vicious occurred in proximity to and in view of the strike headquarters. In so far as the present record discloses, no effort has been made by organized labor to bring any assailant of any of plaintiff's employés to justice.   The managers of the strike were not on trial, and none of them were offered as witnesses.   They will not be condemned unheard, but a word of warning is timely.

[1]  The strike committee, the officers of the union, and the managers of the strike have an active duty to perform.   That duty does not end in instructing strikers or sympathizers, or both, to observe and not to violate the injunction, even though the instructions be given in good faith.   The rational rule prevails that a labor organization, or its officers, or a committee which selects members to act as pickets during a

208 F.—22

strike may become responsible for the unlawful acts of such pickets or their violation of an injunction, although they were instructed in good faith to observe the injunction and do no unlawful act, where, with knowledge that the instructions have been disobeyed by particular persons, such persons are still kept in service. The directing officers of a union, whose members are on a strike and have been enjoined from intimidation, will themselves be deemed guilty of a violation of the injunction if they do not prevent (if they reasonably can do so) its violation by those under their control, or if they countenance acts of intimidation and refrain from using, so far as good faith would suggest, the means which they possess of preventing such acts. Allis-Chalmers Co. v. Iron Moulders Union, 150 Fed. (C. C.) 155, 184; Re McCormick, 132 App. Div. 921, 117 N. Y. Supp. 70; Martin, Modern Law of Labor Unions, 292, 304; Rapalje on Contempt, § 45, p. 59. Mere passive personal obedience to an injunction order is not enough. Inexcusable inattention and negligence resulting in its violation by agents and employés are reprehensible and punishable. Poertner v. Russel, 33 Wis. 193, 202. The constant and regular maintenance of pickets and in considerable numbers, after repeated acts of violence by them, their use of insulting and abusive epithets and threatening language, their creation of an unfriendly atmosphere surrounding workmen, their following of them upon the streets, rise to the dignity of a conspiracy among the pickets unlawfully to intimidate and coerce workmen. Allis-Chalmers Co. v. Iron Moulders Union (C. C.) 150 Fed. 181, 182. The weight of the evidence before me is that when Kia was assaulted the workmen at the mill were required to pass on the sidewalk between rows of strikers. A worse species of intimidation could scarcely be devised, and yet there is not a syllable of evidence in the record that those in charge of the strike expressed a word of disapproval or sought the punishment of any guilty party who violated either the injunction order of this court or, by their assault, the law of the state. The court has allowed picketing, but not unlawful picketing. It should be done in a peaceful manner and by such limited numbers as not to awaken the fear and lead to the intimidation of workmen. Such picketing only was in contemplation when the injunction issued. It has been said (150 Fed. 172) that peaceful picketing is very much of an illusion, but it is practically as well as theoretically possible. When the injunction was granted, attention was drawn by the court to the fact that among strikers and strike breakers there is usually found a lawless element, and that managers of the strike on the one hand and the employer on the other are charged within all reasonable bounds with the responsibility of restraining the lawless from deeds of violence and other unlawful acts. Neither can safely do less. My purpose is to reinforce the views then expressed.

In Bessette v. Conkey Co., 194 U. S. 324, 328, 24 Sup. Ct. 665, 666 (48 L. Ed. 997), Mr. Justice Brewer, speaking for the court, approved the following definition of civil and criminal contempts as given in Re Nevitt, 117 Fed. 448, 458, 54 C. C. A. 622, 632 (C. C. A. 8):

"Proceedings for contempts are of two classes: Those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. * * * A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little, if any, interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings."

Whether a particular act shall be classified as a civil or a criminal contempt is not always easy of determination, because it may partake of the characteristics of both. Contempts are neither wholly civil nor altogether criminal. Bessette v. Conkey Co., 194 U. S. 329, 24 Sup. Ct. 665, 48 L. Ed. 997; Gompers v. Bucks Stove & Range Co., 221 U. S. 441, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. In cases of civil contempt, the order made is interlocutory and remedial to indemnify the injured suitor or coercively to secure obedience to a mandate in his behalf, and the remedy of the accused is by appeal from the final decree rendered in the cause. Re Merchants' Stock Co., 223 U. S. 641, 32 Sup. Ct. 339, 56 L. Ed. 584; Doyle v. London Guarantors Co., 204 U. S. 599, 27 Sup. Ct. 313, 51 L. Ed. 641; Ex parte Heller, 214 U. S. 501, 502, 29 Sup. Ct. 698, 53 L. Ed. 1060; Clay v. Waters, 178 Fed. 385, 391, 392, 101 C. C. A. 645, 21 Ann. Cas. 897 (C. C. A. 8). But where the order made against the accused is punitive, it is a final judgment in its nature and reviewable on writ of error without awaiting such final decree. Re Merchants' Stock Co., supra; Bessette v. Conkey Co., 194 U. S. 338, 24 Sup. Ct. 665, 48 L. Ed. 997; In re Christensen Engineering Co., 194 U. S. 458, 461, 24 Sup. Ct. 729, 48 L. Ed. 1072; Grant v. U. S., 227 U. S. 74, 76, 33 Sup. Ct. 190, 57 L. Ed. 423. The teaching of Re Christensen Engineering Co. is that, where a court is proceeding to vindicate its authority, the criminal element dominates. In the Bessette Case the Circuit Court granted an order temporarily restraining the defendants, their confederates, agents, and servants, from interfering with the operating of the plaintiff's printing and publishing house. Thereafter complaint was made to the court that Bessette and others had knowingly violated the order, but it was not charged that in so doing he had conspired or acted in privity with any other person. The manner of violation was, as in the present cases, fully described. Bessette, like the accused in this case, excepting Coyle, was not named as a party defendant in the original bill. He was found guilty of an act in resistance of the order of the court and was fined. It was held that he could not appeal from the order made against him and that his only

method for testing the validity of the order was by a writ of error. The contempt proceedings against him were therefore necessarily criminal. His case was regarded like misconduct in a courtroom or disobedience of a subpœna and as among those acts primarily directed against the power of the court and consequently as one of criminal rather than of civil contempt. All the present proceedings, save that against Coyle, are necessarily ruled by the Bessette Case and are distinctively criminal, unless the fact that Bessette acted independently in resistance of the court's order renders the rule announced in his case inapplicable here. Each of the moving papers in the present proceedings alleges that the accused did certain acts prohibited by the injunction order and, with some redundancy, that the accused combined, associated, mutually undertook, and concerted with other persons for the purpose of doing such acts and causing them to be done.

[2] The charge thus made is that of a criminal conspiracy. But a proceeding against members of labor unions (and all of the accused in the present instance save Kintosky are such) to punish them for contempt for prosecuting a criminal conspiracy to violate an injunction granted by the court in the civil suit restraining them from interfering with the business and employés of the plaintiff therein is a criminal proceeding. Hammond Lumber Co. v. Sailors' Union (C. C.) 167 Fed. 809, at page 823. In that case it was rightly said that:

"The doctrine of the Bessette Case is that contempt proceedings are always to be regarded as criminal in respect to one not a party to the suit, since no coercive or remedial relief can be had against a stranger but only a judgment punishing him for a violation of the injunction committed with knowledge of its existence."

See, also, Martin, Modern Law of Labor Unions, 314, 315; Garrigan v. U. S., 163 Fed. 16, 89 C. C. A. 494, 23 L. R. A. (N. S.) 1295 (C. C. A. 7); Re Reese, 107 Fed. 942, 47 C. C. A. 87 (C. C. A. 8); Oswald, Contempt of Court, 106, 107. The proceedings against Coyle are of the same character as those against the other accused, for the reason that the plaintiff does not allege any financial loss on account of the acts charged against him (or against any of the accused, for that matter) or pray for compensation or remedial relief. In whatever aspect viewed, the present proceedings are all criminal and not civil, and the penalty imposed must be a fine or imprisonment. I do not mean by this to sustain the contention that the imposition of a fine or an award of compensation for the benefit of the complaining party may not be adjudged against a contemnor at the same time that a jail sentence or a fine to be paid to the government is imposed on him.

[3] To afford remedial relief to the complaining party and at the same time to vindicate the authority of the court by fine or imprisonment requires a complaint which lays the foundation for both compensation and punishment, a course of procedure on the hearing which shows that both were in contemplation by both parties, and that the accused shall have been in the main cause a party defendant against whom the injunction or restraining order ran. Kreplik v. Couch Patents Co., 190 Fed. 565, 111 C. C. A. 381 (C. C. A. 1); Merchants' Stock & Grain Co. v. Board of Trade, 201 Fed. 20, 30, 31, 120 C. C.

A. 582 (C. C. A. 8); Morehouse v. Giant Powder Co., 206 Fed. 24 (C. C. A. 9); Chicago Directory Co. v. U. S. Directory Co. (C. C.) 123 Fed. 194; Continental Gin Co. v. Murray Co., 162 Fed. 873, 89 C. C. A. 563 (C. C. A. 3); Sabin v. Fogarty (C. C.) 70 Fed. 482; Henddryx v. Fitzpatrick (C. C.) 19 Fed. 810; Brougham v. Oceanic Steam Nav. Co., 205 Fed. 857 (C. C. A. 2); Christensen Engineering Co. v. Westinghouse Air Brake Co., 135 Fed. 774, 68 C. C. A. 476 (C. C. A. 2); Id., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072; Re Merchants' Stock Co., 223 U. S. 639, 32 Sup. Ct. 339, 56 L. Ed. 584; Cary Mfg. Co. v. Acme Flexible Clasp Co., 187 U. S. 427, 23 Sup. Ct. 211, 47 L. Ed. 244. If both remedial relief and punishment be given, the latter gives color to and dominates the proceedings. The announcement made in the Kreplik Case, the decision of which antedated that of the Merchants' Stock Co. Case, 223 U. S. 639, 32 Sup. Ct. 339, 56 L. Ed. 584, still holds true that:

"In saying that the criminal element dominates the proceeding, the Supreme Court does not say that such domination excludes the remedial element from being considered or prevents a judge in a case like the one before us from vindicating the court's authority by punitive action and at the same time applying remedial relief."

Contempt proceedings of the dual character above mentioned have usually arisen out of patent cases but are not restricted to such. Merchants' Stock & Grain Co. Case, 201 Fed. 20, 120 C. C. A. 582. The plaintiff might perhaps have invoked against Coyle the course of procedure in the above-mentioned cases in which punishment and remedial relief were both accorded, but it could not have done so in any other instance because none of the other accused was a party defendant in the main cause.

Each of the contempt proceedings was instituted by a "motion for attachment against ——— [the name of the accused being here inserted] for contempt of court." In each instance, as in the Gompers Case, the caption is that of the main cause:

"Between Phillips Sheet & Tin Plate Company, a Corporation, Complainant, and Amalgamated Association of Iron, Steel & Tin Workers et al., Defendants."

Each proceeding purports to be "in equity." Each motion bears the number of the main cause. In each the initial statement is:

"Now comes the complainant, Phillips Sheet & Tin Plate Company, and moves the court for a rule upon ——— [the name of the accused being here inserted] to show cause why he should not be attached for contempt for violation of the injunction heretofore granted in this cause on the 15th day of August, 1913, for the reason," etc.

The language, "the injunction heretofore granted in this cause on the 15th day of August, 1913," is subsequently referred to five times as "the said order of injunction." The prayer is:

"Wherefore the complainant prays for said rule to show cause as aforesaid"; i. e., "to show cause why he [the accused] should not be attached for contempt for violation of the injunction heretofore granted in this cause."

The pleadings in the main cause and the evidence taken on its hearing for a temporary injunction were not mentioned in the motions or

used on the hearing of the contempt charges. The motions were each signed by the plaintiff. The order served on each of the accused bears the title of the main cause. The contempt charges were prosecuted by the plaintiff through the same counsel that represented it at the hearing for a temporary injunction. The defendants therefore contend that the charges must all be dismissed because: (1) The proceedings are wrongly entitled and are made a part of .the main cause as if between the original parties and are therefore civil in nature, whereas they should have been instituted, if designed to be at law for criminal contempt, independently of the main cause and in the name of the United States, thereby making it manifest that they are between the public and the defendants; (2) the charging papers are of a misleading character and are insufficient in that, although they allege contempt of court and disobedience of its order and pray that the accused shall be attached, there is no prayer for the punishment of the accused or for other than their attachment; and (3) that the moving papers do not so inform the accused of the nature of the charges against them as to show whether it is a charge or a suit which they are respectively called upon to answer, and that there is consequently a doubt as to whether the object in view is relief or punishment. The soundness of these propositions is controverted by the plaintiff. Its insistence is that none of the objections interposed by the accused was made until first suggested by the court after it had taken the cases under advisement, and that therefore the objections now made come too late; that the accused could not in any event have been misled, because, not being defendants in the main cause (excepting Coyle), the proceedings against them are necessarily criminal; and that they were all fully apprised that the object in view was punishment for the reason that the order which issued on each motion and was served on each of the accused directs that he appear on a day and at an hour certain and show cause why he "should not be attached and committed for violation of the injunction heretofore ordered and issued in this cause."

There is no merit in the contention that contempt proceedings may not be instituted by motion (Gray v. Chicago, I. & N. R. Co., Fed. Cas. No. 5,713, 1 Woolw. 63; Worcester v. Truman, Fed. Cas. No. 18,043; Foster's Fed. Prac. [4th Ed.] 1094; Aaron v. U. S., 155 Fed. 833, 84 C. C. A. 67 [C. C. A. 8]), or that the stating portion of the respective motions does not set forth facts sufficient to constitute a contemptuous violation of the court's order.

The several proceedings, each of which is criminal in character, were each instituted in the main cause. In view of the teachings of the Gompers Case, it would have been proper and, according to some decisions, was necessary to entitle the motions "United States v. Coyle," or "Monias," etc., or "In re Coyle," or "Monias," etc., as the name of the accused might be. The entitling of the charging instrument, it was said (221 U. S. 446, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. [N. S.] 874), is not a mere matter of form, for the reason that the accused, by a mere inspection of the papers in the proceeding, ought to be able to see whether it is instituted for private litigation or for public prosecution, whether it seeks

to benefit the complainant or to vindicate the court's authority, and that he ought to be free from doubt as to whether relief or punishment is the object in view and to know that he is to meet a charge and not a suit. It was the evidential or informing feature resulting from entitling the papers in the name of the United States that the court had in mind. The announcement thus made accords with what seems to be the logical practice, to wit, that, if the proceeding is for civil contempt for the benefit of the plaintiff, the title should be that of the main cause out of which the alleged contempt arose, but, if for criminal contempt alone, the proceedings should be in the name of the United States. 9 Cyc. 36, 37. That there has been and, we may confidently say, is no uniform rule as to the entitling of contempt proceedings is apparent from an inspection of many reported cases, state and federal, and from the text and cases cited to support it in Rapalje on Contempt, § 95; 9 Cyc. 36, 37; 4 Ency. Pl. & Pr. 772, 773; 5 Standard Ency. Proc. 396; 13 L. R. A. (N. S.) 594, note; and Bates, Pl., Pr. & Forms, 726. But the word "proper" was not used by the court in the Gompers Case, as synonymous with the word "necessary."

[7] "Proper" means "consistent with propriety"; its other signification, "appropriate" or "suited to," being included and swallowed up in the word "necessary." Martin's Executors v. Martin, 20 N. J. Eq. 421, 434; Griswold v. Hepburn, 2 Duv. (Ky.) 20, 25. The Supreme Court did not say that the only or necessary way of instituting a proceeding for criminal contempt is in the name of the United States or to entitle it "In re ———." The following language employed in the Kreplik Case, 190 Fed. 571, 572, 111 C. C. A. 387, although uttered when the court was considering the question of whether remedial relief and punishment might both be properly awarded in the same proceeding or not, is pertinent to the point now under discussion:

"Under the principles announced in that [the Gompers] case, it must, of course, appear in a cause in equity that, before imposing a sentence for criminal contempt, the court distinctly gave the defendant his day in court and allowed him a full and fair hearing upon a criminal charge. In that case the Supreme Court recognizes that the practice with reference to contempt proceedings has been unsettled. * * * We do not find that the Supreme Court has ever said that any particular form of proceeding is required, providing the defendant is left in no doubt as to what charge is made against him."

[4] The jurisdiction of the court is not affected in a contempt proceeding by the form of the title of the charging instrument. Hughes v. Territory of Arizona, 10 Ariz. 119, 85 Pac. 1058, 6 L. R. A. (N. S.) 572; 5 Standard Ency. Proc. 397; Manning v. Securities Co., 242 Ill. 584, 90 N. E. 238, 30 L. R. A. (N. S.) 725; Telegram Newspaper Co. v. Commonwealth, 172 Mass. 294, 52 N. E. 445, 44 L. R. A. 159, 70 Am. St. Rep. 280. If the charging papers in a proceeding for criminal contempt bear the caption of the main cause, the court would doubtless feel constrained, especially if they do not fully advise the accused that he is required to meet such a charge, to sustain a timely and appropriate objection made on that account. If such a proceeding be brought in the name of and be prosecuted by the plaintiff, it

is nevertheless for the benefit of the government, which is the real prosecutor and party in interest (9 Cyc. 35); if a fine be imposed as a punishment, it is paid to the government; if a prison sentence be inflicted, it is to preserve the power and vindicate the dignity of the court and punish disobedience of its order. Fanshawe v. Tracy, 8 Fed. Cas. pp. 997, 1,000; Rapalje on Contempt, § 131. If it is not brought in the name of the real party, the defect will be waived by failure to object at the proper time or by conduct which in legal contemplation implies an intention to overlook it. 31 Cyc. 722, 737, 717. A waiver is made as to formal defects in a proceeding for criminal contempt where the accused appears and goes to trial without appropriate objection. 9 Cyc. 39; 4 Ency. Pl. & Pr. 795, 786; Foster's Fed. Prac. (4th Ed.) 1095; People ex rel. Barnes v. Court of Sessions of Albany County, 147 N. Y. 295, 296, 41 N. E. 700. Cases of criminal contempt which have been instituted in the main cause and not in the name of the United States and have been finally disposed of by reviewing courts have heretofore been cited, and many others, both state and federal, might be mentioned. The accused in the present proceedings by their silence before they went to trial and until after the submission of the cases waived their right to object to the entitlement of the plaintiff's motions and to the institution of the contempt proceedings in the main cause.

[5] Nor is there merit in the claim that the cases should have been conducted by the United States district attorney and not by the complaining party's counsel as representatives of the government. In Re Star Spring Bed Co., 203 Fed. 640 (C. C. A. 3), decided subsequently to the Gompers Case, the petition charging contempt was, without objection, entitled as in the main cause, and the proceeding was prosecuted by the receiver through his attorneys and not by the United States through its district attorney. The situation was such that all possibility of affording remedial relief had passed beyond the court's power. The only order which it could make, if it found the accused guilty, was, as in this case, of a punitive character. A punitive sentence was given and sustained. In Durant v. Washington County, Fed. Cas. No. 4,191, Mr. Justice Miller said that a prosecution for contempt of court is a criminal proceeding in which the government is interested as plaintiff, and that, whenever it becomes necessary for the government's attorney to appear to vindicate its authority as represented in the court, it is his duty to do so; but he prefaced the above statement with the remark that he was not aware of any instance in which the attorney for the government had appeared to present a case for contempt originating in the refusal of a witness or other person to yield obedience to a writ issued in a suit between private parties. My attention has not been directed to any contempt proceeding arising out of an order made in the main cause of a purely civil character, in which the government's counsel has appeared to prosecute, even though the prosecution was for distinctively criminal contempt.

[6] The charging paper, whether it be a petition, motion, or affidavit, of which the complaining party avails himself to invoke the court's action, must not be defective in substance but must show on its face

facts sufficient to constitute a contempt and to justify the relief sought and must also have an appropriate prayer. 9 Cyc. 38; Gompers Case. If it fails in either of these respects, the accused may avail himself of such defect, even if he did not prior to the hearing of his cause object by motion, demurrer, or answer. 31 Cyc. 722, 723; State v. Gallup, 1 Kan. App. 618, 42 Pac. 406. In the Gompers Case, 221 U. S. 441, 31 Sup. Ct. 498, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, the court said:

"Whether the proceedings be civil or criminal, there must be an allegaton that in contempt of court the defendant has disobeyed the order and a prayer that he be attached and punished therefor."

So important did the court deem the form of the prayer that it subsequently repeated the above statement (221 U. S. 448, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. [N. S.] 874) and still later said (221 U. S. 449, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. [N. S.] 874) that, if the plaintiff had asked that the defendants be forced to pay a fine to the government or be punished by confinement in jail, there could have been no doubt that punishment pure and simple was sought. As to the proper form of prayer, see, also, Loveland, Bank. (4th Ed.) 1247. In Rapalje on Contempt, § 98, p. 131, it is said that:

"If the breach has been committed by a person who was not named in the writ or order or notice, the motion must be that he may be committed for contempt in knowingly assisting in the breach."

The import of other language employed by him in that section is that a motion that the defendant stand committed for contempt should be made in every case, whether the accused is a party defendant in the main cause or a stranger to it. A contempt proceeding is sui generis (Bessette v. Conkey Co.), and the Supreme Court has specified the form, or at least the essential substance of the form, of prayer for this particular kind of a proceeding, whether punishment or remedial relief, or both, be sought, and has ruled that punishment cannot be inflicted unless there is a prayer for it. See, also, Re Kahn, 204 Fed. 581 (C. C. A. 2); Anargyros v. Anargyros (C. C.) 191 Fed. 208. None of the motions filed by the plaintiff prays for the punishment of the accused or for other than his attachment, nor is this fatal defect remedied by the recital in the order granted on the filing of the motion and served upon each of the defendants that he show cause why he should not be attached "and committed for violation of the injunction heretofore ordered and issued in this cause." The language quoted is that of the pleader, escaped the attention of the court when the order was approved, and is in excess of the averments and prayer of the motion. As the proceedings are necessarily criminal, the accused must be presumed to have known the law and were each chargeable with knowledge that, if put on trial on a charge properly framed and found guilty, punishment by fine or imprisonment would follow; but, as no relief was sought save their attachment, they were not apprised that their punishment was the object in view. The only purpose an attachment could serve would be to bring the parties into court. State v. Matthews, 37 N. H. 450; Jackson v. Smith, 5 Johns. (N. Y.) 115, 117; Rapalje on Contempt, § 100, p. 134. As they

have all appeared, its issuance is unnecessary (U. S. v. Greene, 3 Mason, 482, Fed. Cas. No. 15,256), and, in view of the defective character of the charging papers and the precedent established by the Gompers Case, the court is powerless either to grant remedial relief or to impose punishment.

The power to punish for contempt of court is to be used sparingly and with great caution and deliberation. Gompers Case; Oswald, Contempt of Court, 17. The purpose in invoking the exercise of such power is the enforcement of law and of lawful orders and the punishment of acts of disobedience. A court thus called upon to enforce the law may itself keep well within its limits. It is not a party to the proceeding. In punishing for contempt, the judge acts impersonally and has no interest or concern other than that the law should be obeyed and enforced. U. S. v. Shipp, 203 U. S. 563, 574, 27 Sup. Ct. 165, 51 L. Ed. 319, 8 Ann. Cas. 265; Oswald, Contempt of Court, 262a. To justify punishment, whether of a remedial or punitive character, for a violation of the court's order or for aiding and assisting in its violation, the charge against the accused and the course of procedure must meet legal requirements, and the proof must conform to the settled rules of evidence. This is the rule in both England and America. Oswald in his work (page 211) says:

"Applications affecting the liberty of the subject are matters strictissimi juris; and although an irregularity in the course of proceedings for attachment or committal does not render the proceedings void, and the court has power to condone the irregularity, yet slips in the practice, where the liberty of the subject is concerned, are seldom allowed by the court to be got rid of under this power, and in many cases delay and expense have been incurred, and even justice defeated, by slips and irregularity in the proceedings. A direct noncompliance with the rules of practice as to committal and attachment ought not to be condoned by the court. * * * But in a proper case, and for the purpose of justice, and where valid reasons are given for it, an irregularity may be condoned or insistence upon it may not be permitted."

When all legal requirements are met, punishment should be sure, fitting, and as swift as due deliberation admits, for, as said in the Gompers Case, 221 U. S. 450, 31 Sup. Ct. 501, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874:

"The power of courts to punish for contempt is a necessary and integral part of the independency of the judiciary and is absolutely essential to the performance of the duty imposed on them by law. Without it they are mere boards of arbitration whose judgments and decrees would be only advisory. If a party (the accused) can make himself a judge of the validity of orders which have been issued and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be but a mere mockery. * * * Without authority to act promptly and independently, the courts could not administer public justice or enforce the rights of private litigants."

The several proceedings are dismissed, but without prejudice to the institution of new proceedings, if that be deemed advisable, or to the court's right to punish by proper proceedings contempts, if any, committed against it.